ACCEPTED
03-15-00174-CV
5648390
THIRD COURT OF APPEALS
AUSTIN, TEXAS
6/11/2015 9:15:36 PM
JEFFREY D. KYLE
CLERK

No. 03-15-00174-CV

# THIRD COURT OF APPEALS
## AT AUSTIN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
6/12/2015 11:30:36 AM
JEFFREY D. KYLE
Clerk

LEVI MORIN,

Appellant,

v.

LAW OFFICE OF KLEINHANS GRUBER, PLLC,

Appellee.

Appeal from the 201st District Court
of Travis County
Trial Court No. D-1-GN-14-003874

## BRIEF OF APPELLANT LEVI MORIN

Leif A. Olson
  State Bar No. 24032801
  leif@olsonappeals.com
THE OLSON FIRM, PLLC
PMB 188
4830 Wilson Road, Suite 300
Humble, Texas 77396
(281) 849-8382

**Counsel for
Appellant Levi Morin**

*Oral Argument Requested*

## Identity of Parties and Counsel

**Defendant-appellant**

Levi Morin

Leif A. Olson
  State Bar No. 24032801
  leif@olsonappeals.com
The Olson Firm, PLLC
PMB 188
4830 Wilson Road, Suite 300
Humble, Texas 77396
(281) 849-8382

**Defendant-appellee**

Law Office of
Kleinhans Gruber,
PLLC

Kimberly G. Kleinhans
  State Bar No. 24062755
  kim@lawofficeofkg.com
Keith L. Kleinhans
  State Bar No. 24065565
  keith@lawofficeofkg.com
Law Office of Kleinhans
  Gruber, PLLC
12600 Hill Country Blvd., Suite R-275
Austin, Texas 78738
(512) 961-8512
(512) 623-7320 (fax)

# Table of Contents

Identity of Parties and Counsel ................................................................ 1

Table of Contents ................................................................................... 2

Index of Authorities ............................................................................... 4

Statement of the Case ............................................................................. 8

Statement on Oral Argument ................................................................... 9

Citations and References ......................................................................... 9

Issue Presented .................................................................................... 10

Facts .................................................................................................. 11

    A. Morin reviews the firm. ............................................................. 11

    B. The firm responds to the review. ................................................ 12

    C. The lawsuit. ............................................................................ 13

        1. The petition and the discussions it provoked. .................... 13

        2. Morin moves to dismiss. ................................................ 14

    D. Hearings and more firm filings. ................................................. 15

    E. Trial court's ruling. ................................................................. 16

Summary of Argument: *The firm didn't support its case with clear and specific evidence, and its claims should have been dismissed.* ..................... 17

Standard of Review ............................................................................... 18

Argument ............................................................................................ 20

    A. The firm didn't establish a prima facie case of discrimination. ........................................................................... 20

        1. The firm has no evidence because its exhibits were inadmissible. ............................................................... 22

        2. The firm's evidence was neither clear nor specific. ............. 25

    B. Morin acted timely. .................................................................. 34

  1. The hearing was timely.......................................................... 35

  2. Morin's exhibits were timely. ............................................. 37

 C. Morin's evidence of attorneys' fees was uncontested, and he
 is entitled to additional fees and sanctions. .............................. 38

Conclusion ..................................................................................... 39

Certificate of Compliance ................................................................ 40

Certificate of Service ...................................................................... 40

# Index of Authorities

**Cases**

*Barreca v. Nickolas*
683 N.W.2d 111 (Iowa 2004) ........................................................ 27

*Bently v. Bunton*
94 S.W.3d 561 (Tex. 2002) .................................................... 20, 21

*Better Business Bureau of Metropolitan Houston, Inc. v. John Moore Services, Inc.*
441 S.W.3d 345
(Tex. App. – Houston [1st Dist.] 2013, pet. denied) ...................... 19

*Bexar Building & Loan Assn. v. Heady*
50 S.W. 1079 (Tex. Civ. App. – San Antonio 1899, writ ref'd)..... 23

*Brown v. Moore*
38 Tex. 645 (1873) ........................................................................ 23

*Burbage v. Burbage*
447 S.W.3d 249 (Tex. 2014) ......................................................... 28

*Burrow v. Arce*
997 S.W.2d 229 (Tex. 1999) ......................................................... 34

*Carpenter v. Cimarron Hydrocarbons Corp.*
98 S.W.3d 682 (Tex. 2002)............................................................ 34

*Casso v. Brand*
776 S.W.2d 551 (Tex. 1989) ......................................................... 30

*City of Brownsville v. Alvarado*
897 S.W.2d 750 (Tex. 1995)........................................................... 22

*City of San Antonio v. Pollock*
284 S.W.3d 809 (Tex. 2009) ..................................................... 19, 33

*Dynamic Image Technologies, Inc., v. United States*
221 F.3d 34 (1st Cir. 2000) ........................................................... 27

*Elliott v. Weatherman*
     396 S.W.3d 224 (Tex. App. – Austin 2013, no pet.) ...................... 19

*Employers Insurance of Wausau v. Halton*
     792 S.W.2d 462 (Tex. App. – Dallas 1990, writ denied) ............... 35

*Federal Deposit Ins. Corp. v. Hulsey*
     22 F.3d 1472 (10th Cir. 1994) .................................................... 27

*Forbes, Inc. v. Granada Biosciences, Inc.*
     124 S.W.3d 167 (Tex. 2003) ................................................. 20, 21

*Guevara v. Ferrer*
     247 S.W.3d 662 (Tex. 2007) ........................................................ 29

*Hancock v. Variyam*
     400 S.W.3d 59 (Tex. 2013) .................................................... 21, 27

*Hearst Corp. v. Skeen*
     159 S.W.3d 633 (Tex. 2005) ........................................................ 30

*HM Hotel Properties v. Peerless Indemnity Ins. Co.*
     874 F. Supp. 2d 850 (D. Ariz. 2012) ........................................... 28

*Huckabee v. Time Warner Entertainment Co., L.P.*
     19 S.W.3d 413 (Tex. 2000) ............................................... 21, 30, 31

*Hurlbut v. Gulf Atlantic Life Ins. Co.*
     749 S.W.2d 762 (Tex. 1987) ........................................................ 21

*In re Lipsky*, No. 13-0928
     __ S.W.3d __, 2015 WL 1870073
     (Tex. Apr. 24, 2015) .................................................. 19, 21, 28, 30

*In re M.N.*
     262 S.W.3d 799 (Tex. 2008) ........................................................ 34

*Jelinek v. Casas*
     328 S.W.3d 526 (Tex. 2010) ........................................................ 29

*Life Insurance Co. of Virginia. v.Gar-Dal, Inc.*
     570 S.W.2d 378 (Tex. 1978) ........................................................ 34

*New York Times Co. v. Sullivan*
    376 U.S. 254 (1964)......................................................................30

*Owens-Corning Fiberglas Corp. v. Malone*
    972 S.W.2d 35 (Tex. 1998)......................................................... 19

*Phillips v. Brazosport Savings & Loan Assn.*
    366 S.W.2d 929 (Tex. 1963).......................................................23

*Rehak Creative Services, Inc. v. Witt*
    404 S.W.3d 716
    (Tex. App. – Houston [14th Dist.] 2013, pet. denied) ................. 18

*Serafine v. Blunt*, No. 03-12-00726-CV
    ___ S.W.3d ___, 2015 WL 2061922
    (Tex. App. – Austin May 1, 2015, n.p.h.)..................................... 18

*St. Amant v. Thompson*
    390 U.S. 727 (1968)..................................................................... 31

*Stelly v. Papania*
    927 S.W.2d 620 (Tex. 1996) ................................................. 34, 35

*Walker v. Packer*
    827 S.W.2d 833 (Tex. 1992) ....................................................... 19

*Waste Management of Texas, Inc. v. Texas Disposal Systems Landfill, Inc.*
    434 S.W.3d 142 (Tex. 2014) .......................................................28

*WFAA, Inc. v. McLemore*
    978 S.W.2d 568 (Tex. 1998) ....................................................... 21

**Statutes**

Tᴇx. Cɪv. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ § 18.001 ................................39

Tᴇx. Cɪv. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ § 27.003 ........... 14, 24, 34, 35, 37

Tᴇx. Cɪv. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ § 27.005 ......................19, 20, 21

Tᴇx. Cɪv. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ § 27.006 ...........................24, 36

Tᴇx. Cɪv. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ § 27.009 ................................39

Tex. Govt. Code § 312.011(1) ...................................................... 22

**Rules**

Tex. R. Civ. P. 13 ...................................................................... 25

Tex. R. Civ. P. 176.2(a) ............................................................ 24

Tex. R. Civ. P. 176.3 ................................................................ 24

Tex. R. Civ. P. 191.5 ................................................................ 24

Tex. R. Civ. P. 205.2 ................................................................ 24

Tex. R. Civ. P. 205.3 ................................................................ 24

Tex. R. Civ. P. 21(b) ................................................................ 22

Tex. R. Civ. P. 215.2 ................................................................ 25

Tex. R. Civ. P. 215.3 ................................................................ 25

Tex. R. Discip. P. 1.06 ............................................................. 32

Tex. R. Discip. P. 2.10 ............................................................. 32

**Other Authorities**

Tex. Lawyer's Creed ............................................................. 35

## Statement of the Case

| | |
|---|---|
| Nature of the case | Anti-SLAPP motion by former client against a law firm that sued him for defamation based on a review the client posted on Yelp |
| Trial court | 201st District Court<br>Judge Stephen Yelenosky presiding |
| Trial court proceedings | The firm sued Morin for defamation. CR 3–10. Morin moved to dismiss under the Texas Citizens Participation Act. CR 15–31, 32–93. The firm filed several responses and objected to some evidence as untimely. CR 98–119, 120–192, 206–467, 468–729. Morin replied and objected that the firm's evidence was inadmissible. CR 730–732. |
| Trial court disposition | The trial court sustained the firm's objections to Morin's evidence, overruled Morin's objections to the firm's evidence, and denied the motion to dismiss. CR 738, Appx. 4. |

## Statement on Oral Argument

Oral argument would benefit the Court. This case concerns how evidentiary standards are interpreted under the Texas Citizens Participation Act, which is an issue that Texas courts have largely not addressed. It also involves procedural issues under the Act that do not appear to have been addressed.

## Citations and References

| | |
|---|---|
| the Act | Texas Citizens Participation Act |
| Appx. *x* | Appendix at Tab *x* |
| CR *xx–yy* | Clerk's record at pages *xx* through *yy* |
| RR *aa:bb–cc* | Reporter's record at page *aa*, lines *bb* through *cc* |
| SR *xx* | Supplemental clerk's record at page *xx* |

## Issue Presented

Did the trial court err in finding that a statement in a Yelp review of a law firm was defamatory and thus err in denying a former client's motion to dismiss under the Texas Citizens Participation Act?

## A. Morin reviews the firm.

Levi Morin hired the Law Offices of Kleinhans Gruber to represent him in a family-law matter. CR 87. He became unhappy with the firm's work, particularly after a hearing when, as he stated under oath, a firm associate came to court with a hangover. CR 88–89. In June 2014 he posted a review of the firm on the business-review site Yelp:

> You will be doing the majority of the work you'll be paying Kimberly $400 and hour to do for you. I am all for being involved in the process but Kimberly only cares about her paycheck and not at all about me, or her clients presumably. For someone so expensive her legal "counsel" consist of her arguing with you or sending hung over "associates" to court dates [Michael Seigler].

> As well as almost doing nothing for me, in the way of leading me through an overly complex legal system and helping to understand what's going on within it, she does not even know the basics of the laws she claims to specialize in. She told me to call the police and that they would make my ex give me my son for our court appointed time. Anyone who's had to deal with the cops when they show up knows that they can't force anyone to give children to someone else. Any good fathers, or moms, out there who are trying to get a fare shake should steer clear of Kim. On multiple occasions she has proven her worth, or lack thereof, with shitty

legal advice, questionable associates, and sub-par management.

I'm a great dad with a crappy ex and in Texas that means playing the long game when it comes to getting what you should have as a father. That means that in the here and now you're paying a lawyer for piece of mind and to set yourself up for success later on down the road. You're not going to get that with Kimberly and that's really surprising given the recommendation from Blake Erskine.

Appx. 1.

## B. The firm responds to the review.

Eight weeks later, Kimberly Kleinhans, half of the firm's husband-and-wife partnership, emailed Morin. She asked him to delete the review, which she called "business slander," that he had posted. CR 55; CR 710. The sole statement that she identified as "slanderous" was that her billing rate wasn't $400 per hour. *Id.* In response, Morin edited the review to remove that statement:

| Original | Edited |
|---|---|
| You will be doing the majority of the work you'll be paying Kimberly $400 and hour to do for you. | You will be doing the majority of the work you'll be paying Kimberly an exorbitant rate to do for you. |

Appx. 1.

Kleinhans wasn't satisfied. She said so in another email late that afternoon. This time, she claimed that five specific statements weren't

true. One of those was that Siegler had appeared in court hungover. CR 53–54; CR 707–709. Morin refused to remove the review. *See* CR 707.

A month later, the firm posted on Yelp to reply to Morin's review. It suggested strongly that the firm had fired Morin as its client because he was disrespectful and refused to follow the firm's advice. It added that this invalidated Morin's opinion; he had been fired, so his review was "clearly misplaced." The firm closed by touting that lawyers were on the "Rising Star" list put out by Thomson Reuters. CR 58.

The firm sued Morin the next day. CR 3.

## C. The lawsuit.

### 1. The petition and the discussions it provoked.

The firm alleged that Morin was liable for business disparagement, defamation, and defamation per se. CR 5–7. Morin answered that his review was a statement of opinion protected by the Texas Citizens Participation Act, Texas's anti-SLAPP statute, and that the claims should be dismissed. CR 12.

Before answering, Morin's lawyer wrote to Kleinhans to discuss the firm's dropping the suit rather than have the parties go through an anti-SLAPP proceeding. Kleinhans demurred. Appx. 2 at 18. Morin's lawyer also informed Kleinhans that Morin wouldn't be responding to the discovery that the firm had propounded with the petition because

he planned to move to dismiss which, under the Act, would put all discovery on hold. Appx. 2 at 18–19. In further discussions, Morin's lawyer offered to furnish a smaller set of agreed-upon discovery that would be relevant to the arguments in the motion to dismiss, but Kleinhans insisted that Morin answer the firm's requests in full. Appx. 2 at 19–20.

### 2. Morin moves to dismiss.

On December 1, the last day for him to do so, Morin filed his motion to dismiss. CR 15–31; *see* Tex. Civ. Prac. & Rem. Code § 27.003. Two days later, he filed the exhibits that had been cited in, but not attached to, the motion. CR 32–93. The motion stated three bases for dismissal:

- The firm didn't establish a prima facie case against Morin,

- The statements were substantially true, and

- The statements were privileged.

CR 21, 24, 28. The first argument and third arguments were solely legal; the second was supported by Morin's declaration. CR 87–89.

The firm nonsuited its claims. CR 96. Morin did not. Following further, extended attempts to reach an agreement on discovery, *see* Appx. 2 at 19–20, Morin set the motion for hearing on February 26, the 90th day after the motion had been filed. *See, e.g.,* CR 116.

The firm responded with a flurry of papers. It set a hearing on a request for a continuance for Tuesday morning. CR 105. (Morin had filed and served his notice of hearing on a Friday.) It also filed a motion to strike,[1] which it amended twice before the Tuesday-morning hearing. CR 98–119, 120–192.

**D. Hearings and more firm filings.**

The trial court denied the continuance and heard the motion on February 26. It recessed the hearing until March 5 because of an ongoing jury trial. No one objected to the recess. RR 3:1–9.

While the hearing was recessed, the firm filed an amended petition (how it amended claims that it had nonsuited wasn't explained), CR 195–205; a response to Morin's motion, CR 206–467; and, the day before the hearing resumed, a supplemental response. CR 468–729. Among the exhibits to the supplement were an affidavit from Kleinhans, CR 487–726, and two other affidavits. One was from Michael Siegler, the lawyer whom Morin had identified as hungover. CR 727–728. The other was from Martin Garza, the lawyer who had been opposite Siegler at that hearing. CR 729. Both affidavits had problems.

---

[1]  Actually, it was "Plaintiff's Motion to Strike or Deny Morin's Motion to Dismiss and Motion for Nonsuit or in the Alternative Motion for Continuance and Motion to Withdraw Notice of Nonsuit and Motion for Sanctions." But "motion to strike" captures the essence of it.

***Garza's affidavit.*** Garza had originally refused to furnish testimony unless compelled to do so. CR 467. In response, Kleinhans concocted a document she entitled "Subpoena for Affidavit Testimony." Appx. 2 at 15–16. It mimicked the form of an actual subpoena, but rather than demand presence before a court or at a deposition, it "commanded [Garza] to give testimony via affidavit...." Appx. 2 at 15. Garza didn't sign the affidavit until Kleinhans had dropped that document on him; Kleinhans didn't furnish a copy of the "subpoena" to Morin until the day before the hearing resumed. CR 729 (March 3 subpoena); Appx. 2 at 16 (March 3 receipt); Appx. 2 at ¶ 9 (untimely service).

The issue with Siegler's affidavit was simpler: It was notarized by Kleinhans. CR 727.

Morin objected to all three affidavits. CR 730–732.

## E. Trial court's ruling.

Following the hearing, the trial court denied the motion to dismiss. It memorialized its rulings in a written order. That order concerned both matters of timing and matters of substance. As to timing, the court found no good cause to extend Morin's deadline to file his motion or have the motion heard. It struck Morin's exhibits, which were filed after the motion deadline, and overruled Morin's objections to the firm's exhibits. Its substantive basis for denying the motion to dismiss was that the firm had made a prima facie case for defamation

based on Morin's statement that Siegler was hungover, and Morin hadn't established an affirmative defense by a preponderance of the evidence. Appx. 4.

Morin now appeals.

## Summary of Argument:

*The firm didn't support its case with clear and specific evidence, and its claims should have been dismissed.*

Morin has the liberty to speak his mind and to do so even when it hurts someone's feelings. He did so when he posted a negative review of his former lawyers. The firm sued him for defamation, but Texas protects Morin from such suits through the Texas Citizens Participation Act. The Act required the firm to establish a prima facie case on each element of its claims by clear and specific evidence. It didn't do so. The trial court's contrary conclusion was error.

The trial court erroneously permitted the firm to support its case with inadmissible affidavits — affidavits that were filed too late, that weren't properly solemnized, and that were obtained through false pretenses. Putting that inadmissibility to the side, the firm still didn't support each element of its claims. It furnished no evidence of damages and no clear, specific evidence of malice.

The finding that there wasn't good cause for Morin's timing is also reversible error. Morin had good cause to file his motion when he did and to set a hearing date for the date he did. His doing so was neither

deliberately indifferent toward or directly in contravention of the case schedule, and his doing so had no negative effects on the firm.

Finally, Morin's evidence of his pre-motion legal fees was uncontroverted. The trial court didn't reach that issue because it didn't grant Morin's motion, but the firm's decision not to file controverting affidavits establishes Morin's reasonable and necessary legal fees as a matter of law. Morin is also entitled to his post-motion fees and to a sanction against the firm in an amount that the trial court must determine.

The trial court erred. It should have dismissed the firm's suit and awarded fees and sanctions to Morin under the Act. The Court should reverse the trial court's order, render judgment dismissing the case and awarding Morin his pre-motion legal fees, and sever and remand the question of Morin's post-motion fees and an appropriate sanction against the firm.

## Standard of Review

The Court reviews questions of law, such as whether evidence meets the standards established in the Act, de novo. *Serafine v. Blunt*, No. 03-12-00726-CV, ___ S.W.3d ___, 2015 WL 2061922, at \*2 (Tex. App. – Austin May 1, 2015, n.p.h.), citing *Rehak Creative Svcs., Inc. v. Witt*, 404 S.W.3d 716, 725 (Tex. App. – Houston [14th Dist.] 2013, pet. denied). Here, that means that the Court conducts a de novo re-

view of whether (1) the firm established, by clear and specific evidence, a prima-facie case on each element of each of its claims; and (2) Morin established an affirmative defense by a preponderance of the evidence. Tᴇx. Cɪv. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ § 27.005(c), (d).

As in other sufficiency-of-the-evidence contexts, conclusory statements constitute no evidence. *Serafine*, 2015 WL 2061922 at *2, citing *Better Bus. Bureau of Metro. Hou., Inc. v. John Moore Svcs., Inc.*, 441 S.W.3d 345, 355 (Tex. App. – Houston [1st Dist.] 2013, pet. denied); *In re Lipsky*, No. 13-0928, ___ S.W.3d ___, 2015 WL 1870073, at *9 (Tex. Apr. 24, 2015), citing *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009).

The Court reviews the trial court's evidentiary and procedural rulings — whether there was good cause for an extension; whether evidence should be excluded or not — for abuse of discretion. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). That standard results in reversible error in two scenarios: The trial court acted without reference to guiding rules of principles, or the trial court didn't analyze or apply the law correctly. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992); *Elliott v. Weatherman*, 396 S.W.3d 224, 228 (Tex. App. – Austin 2013, no pet.).

**Argument**

There is no question that Morin's review constitutes a public commentary on services offered in the marketplace. It is thus an exercise of his liberty of free speech that the Act protects. He is entitled to dismissal unless the firm established a prima facie case of defamation by clear and specific evidence. Even if it does so, Morin is still entitled to have the case dismissed if he establishes an affirmative defense.

The firm didn't meet its burden. Even if it had, Morin met his. The trial court should have dismissed the case and awarded Morin his legal fees. The Court should render judgment doing just that.

## A. The firm didn't establish a prima facie case of discrimination.

To avoid dismissal, the firm had to demonstrate a prima facie case on each element of each of its claims, and it had to do so by clear and specific evidence. TEX. CIV. PRAC. & REM. CODE § 27.005(c). The trial court found that it had done so regarding one statement, Morin's assertion that Siegler had come to court hungover. Appx. 4.

The firm's three claims were for defamation, defamation per se, and business disparagement. CR 5–7.

- **Falsity.** Each of those required the firm to show that Morin made a false statement of fact. *Bently v. Bunton*, 94 S.W.3d 561, 580 (Tex. 2002) (defamation); *Forbes, Inc. v. Granada Bioscis., Inc.*, 124 S.W.3d 167, 170 (Tex. 2003) (business disparagement).

20

- **Malice.** The disparagement and defamation per se claims required the firm to show that Morin acted maliciously. *Forbes*, 124 S.W.3d at 170 (disparagement); *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987) (same); *WFAA, Inc. v. McLemore*, 978 S.W.2d 568, 571–72 (Tex. 1998) (defamation per se). In this context, "malice" means that he had a significant doubt about the statement's truth. *Bently*, 94 S.W.3d at 591, 596.

  Because it must establish malice by clear and convincing evidence to prevail at trial, *Forbes*, 124 S.W.3d at 172, the firm must make a prima facie showing that it can prove malice by clear and convincing evidence. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c). When unpacked, this unusual standard requires that the firm produce evidence that would, if unrebutted, be sufficient as a matter of law to create a firm belief in a factfinder's mind that the allegation was true. *Bently*, 94 S.W.3d at 597 (clear-and-convincing standard); *Lipsky*, 2015 WL 1870073, *6 (meaning of "prima facie"). *But see Huckabee v. Time Warner Entmt. Co., L.P.*, 19 S.W.3d 413, 423 (Tex. 2000) (even though proof at trial would require clear and convincing evidence, mere fact issue defeats summary judgment on defamation claim).

- **Damages.** The firm must demonstrate actual damages to establish its defamation and disparagement claims. *See Hancock v. Variyam*, 400 S.W.3d 59, 66 (Tex. 2013) ("[T]he plaintiff must always prove special damages to recover them.") For its disparagement claim, it had to show evidence of actual, realized pecuniary loss. *Hurlbut*, 749 S.W.2d at 762. For its defamation claim, it needed to show actual injury — actual mental anguish or loss of reputation.

21

The firm missed all three. The trial court's ruling to the contrary was error as a matter of law.

### 1. The firm has no evidence because its exhibits were inadmissible.

The only evidence of the falsity of the Siegler's-hangover statement came from the affidavits of Siegler and Garza. CR 727, 729. Neither affidavit was admissible because both were fatally flawed. Removing those affidavits removes the only evidence of falsity, mandating reversal. *See City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753–54 (Tex. 1995).

#### a. Untimeliness.

Both affidavits — and Kleinhans's, too — were untimely. They weren't filed until the hearing was already underway, and even then only the day before it resumed. This gave Morin essentially no notice of the firm's arguments so that he could formulate a reply. The firm was required to furnish at least three days' notice. TEX. R. CIV. P. 21(b). That late filing alone required exclusion.

#### b. Lack of oath.

Siegler's affidavit was inadmissible because it was unsworn — it was unsworn because Kleinhans wasn't fit to administer an oath and notarize the affidavit. *See* TEX. GOVT. CODE § 312.011(1) (document not an "affidavit" unless "sworn to before an officer authorized to administer oaths"). A person with an interest in an underlying mat-

ter can't notarize documents related to that matter. *See Phillips v. Brazosport Sav. & Loan Assn.*, 366 S.W.2d 929, 931–32 (Tex. 1963). This is for the same reason that judges aren't allowed to sit over cases in which they have an interest: It eliminates the temptation to rule for one's own interests and promotes public faith in the independence and accuracy of public works. *See Bexar Building & Loan Assn. v. Heady*, 50 S.W. 1079, 1080 (Tex. Civ. App. – San Antonio 1899, writ ref'd) (quasi-judicial nature of notary's office disqualifies notary from acting "where he has any interest"). This rule is not some surprise or trap; it is ancient and consistent. Almost 150 years ago, the Supreme Court disposed of a case in less than a paragraph on the basis that a notary couldn't solemnize a document for a transaction in which he would receive a commission. *Brown v. Moore*, 38 Tex. 645, 648 (1873). Its full discussion of the matter:

> Authorities are sufficiently referred to in the able briefs of counsel to this point. We think the law is well settled….

*Id.*

Kleinhans, a partner in the plaintiff law firm and one of the lawyers mentioned by name in Morin's review, has an unquestionable interest in the outcome of the lawsuit. The rule was "well settled" in the 1870s: Kleinhans's notarization of Siegler's affidavit nullified the document. The trial court erred in overruling Morin's objection.

23

### c. Violation of the law and the Rules.

Garza was induced to sign an affidavit only because Kleinhans served upon him a "Subpoena for Affidavit Testimony." There is no such thing, and the affidavit procured through it was inadmissible.

The affidavit was false on its face and ineffective to demand compliance. A person can be compelled to testify only at "a deposition, hearing, or trial[.]" TEX. R. CIV. P. 176.2(a). An affidavit is none of those; a "subpoena" to compel "affidavit testimony" would essentially command, "Come to my office and sign this, or else a court will hold you in contempt." This destroys the adversary system in place to assure that the truth comes to light through examination and cross-examination. This is why subpoenas on third parties must be served on the target and on the opposing counsel simultaneously. TEX. R. CIV. P. 191.5, 205.2, 205.3. Kleinhans didn't bother with even that; Morin's counsel didn't receive a copy of the "subpoena" until Kleinhans emailed it to him with Garza's affidavit. Appx. 2 at 2.

Even if such a subpoena existed, *this* subpoena would be barred. Subpoenas can't be used to dodge discovery limitations. TEX. R. CIV. P. 176.3(b). That is the only thing that this "subpoena" was designed to do: Discovery wasn't just limited once Morin moved to dismiss, it was arrested altogether. TEX. CIV. PRAC. & REM. CODE §§ 27.003(c), 27.006(b).

The firm procured Garza's "testimony" by faking a command from a court. There was no basis in law for it to do so. Excluding the affidavit was the least the trial court was required to do. Tex. R. Civ. P. 215.2, 215.3; *cf.* Tex. R. Civ. P. 13. Overruling Morin's objection was reversible error.

## 2. The firm's evidence was neither clear nor specific.

Even assuming that the firm's affidavits were admissible, their attempts to support a prima-facie case on the firms claims was a failure. In many instances, the firm adduced not just unclear or unspecific evidence, but no evidence whatsoever.

### a. The claim of falsity is unsupported.

Once Siegler's and Garza's affidavits are excluded, the only statement about Siegler is from Kleinhans's affidavit. CR 493. But Kleinhans has nothing to say about Siegler's presence, or physical state while appearing, in court with Morin. She states that there have never been other reports of Siegler being drunk or hungover in court — but that is only evidence that there haven't been reports of it before, or that the incident with Morin was the first time.

Her only other statement is that she "corresponded" with Siegler on the day of and the day before the hearing and that he didn't seem to be intoxicated or sweating off the effects of it; "his speak was clear, he was alert[,] and his thoughts were well organized." Assuming that

Kleinhans means "communicate" instead of "correspond" — a lack of clarity and specificity in and of itself — this is no evidence about Siegler's state. Kleinhans doesn't say when the day before she spoke with Siegler; if it was during work hours, that is meaningless, because a hangover in the morning implies that drinking occurred at night.

Nor does she say when on the hearing day she spoke with Siegler. One assumes that he wasn't speaking with her during his court appearance; judges frown, to put it mildly, on phone calls in open court. If he wasn't speaking with her in the morning, that leaves the afternoon and the evening — but one does recover from a hangover. At any rate, the physical effects of a hangover aren't necessarily apparent over the phone or in writing. Speaking with Siegler over the phone or writing him by text message or email wouldn't necessarily reveal a hangover, either.

Even if it constituted some evidence that Siegler wasn't hung over, it isn't clear, and it isn't specific. We don't know when Kleinhans spoke with Siegler. We don't know what was said. We don't know how else they communicated, or when those communications were. We don't even know if the communications were of the sort that might reveal a hangover — brief text messages, for instance, instead of in-depth research memos; short voicemails instead of extemporaneous

discussion of recent legal decisions.[2] Indeed, Kleinhans isn't even consistent in describing her interactions with Siegler — she states that she corresponded with him, which means communicating in writing, but she also states that his speech was clear, which requires that they have communicated orally. Kleinhans's testimony is neither clear nor specific, and it cannot support a case for falsity.

### b. The mental-anguish claims are legally impossible.

Damages for mental anguish — the only non-economic damage that Kleinhans proffers — require evidence of "a substantial disruption in daily routine" or "a high degree of mental pain and distress." *Hancock*, 400 S.W.3d at 68. A company cannot, by its very nature, suffer those damages; they can be borne only by a natural person. A company has no daily routine; its employees and agents do. A company has no mental acuity or stress centers; its employees and agents do. Because this lawsuit is by a company, it is a lawsuit where mental-anguish damages are unrecoverable. Research uncovers no court that has held to the contrary. *See Barreca v. Nickolas*, 683 N.W.2d 111, 124 (Iowa 2004); *Dynamic Image Techs., Inc., v. U.S.*, 221 F.3d 34, 37 fn.2 (1st Cir. 2000); *FDIC v. Hulsey*, 22 F.3d 1472, 1489 (10th Cir. 1994).

---

[2] The Supreme Court had just decided *Marvin M. Brandt Revocable Trust v. U.S.*, 134 S. Ct. 1257 (March 10, 2014) that morning. No doubt discussion of railroads' abandonment of government-granted easements over private lands was all that could be overheard at 1000 Guadelupe that day.

There is no exception for businesses that organize as limited-liability companies rather than incorporate. *See HM Hotel Props. v. Peerless Indem. Ins. Co.*, 874 F. Supp. 2d 850, 853–54 (D. Ariz. 2012).

### c. The economic-injury claims are unsupported.

Neither is there evidence of damage to the firm's reputation. As the Supreme Court held recently in *Waste Management v. Texas Disposal Systems*, general testimony about the need for a clean reputation, the impact of a statement on one's good name, or an estimated value of the impact on the business is too little. *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 160 (Tex. 2014). And as it said in *Burbage v. Burbage* shortly afterward, even identifying that customers have cancelled contracts, or not entered into contracts, is insufficient. 447 S.W.3d 249, 261–262 (Tex. 2014). Following that standard, the Supreme Court held just a few weeks ago that testimony that a plaintiff's statements caused "direct pecuniary and economic losses and costs, lost profits, loss of its reputation, and loss of goodwill" was not just insufficient to support a claim under the Act — it was insufficient, period. *Lipsky*, 2015 WL 1870073 at *9.

The firm doesn't have evidence that rises even to those rejected levels. What it does have is this statement from Kleinhans:

> We do not pay for advertisement, we obtain our business from referrals and online traffic, therefore, it is without question that our business has declined since

28

LEVI MORIN's posting [on Yelp]. The decline is re-flected in our overall business income from the date of the posting to the present….

CR 494. That isn't evidence of damages; it is raw, unadulterated fallacy. It is pure *post hoc ergo propter hoc*, and, "[s]imply stated, correlation does not imply causation." *Jelinek v. Casas*, 328 S.W.3d 526, 533 (Tex. 2010). In other words, if something happens closely on the heels of an event, that raises suspicion that the event was the cause. "But suspicion has not been and is not legally sufficient to support a finding of legal causation." *Guevara v. Ferrer*, 247 S.W.3d 662, 668 (Tex. 2007).

That suspicion is all Kleinhans has. She doesn't know any particulars that might support a claim for special damages:

- She doesn't know how many clients the firm used to get from Yelp.

- She doesn't know how many clients it gets from Yelp now.

- She doesn't know what types of cases those clients brought to the firm.

- She doesn't know how profitable those cases were compared to non-Yelp cases or to the firm's average case.

- She doesn't testify to potential clients who turned down the firm because of Morin's posting.

- She doesn't testify to hearsay from other lawyers that they picked up clients who were turned off from the firm by Morin's posting.

- She doesn't testify to how her workload, or the firm's profitability, changed because of changes to her schedule due to her contemporaneous pregnancy. *Cf.* CR 494 (Kleinhans's self-described "fragile state" and the "rest and relaxation recommended by [her] doctor" due to her pregnancy).

"Bare, baseless opinions do not create fact questions, and neither are they a sufficient substitute for the clear and specific evidence required to establish a prima facie case under the [Act]." *Lipsky*, 2015 WL 1870073 at *9. Bare opinion based on suspicion is all the firm has. That bare opinion is less than clear, less than specific, less than would permit a finding of injury — it is no evidence at all.

### d. The malice claims are unsupported.

In the defamation context, "malice" isn't spite or ill will. Rather, it is a term of art: Morin acted with malice only if he knew that what he wrote was false or he recklessly disregarded the possibility it was false. *Huckabee*, 19 S.W.3d at 420, citing *Casso v. Brand*, 776 S.W.2d 551, 558 (Tex. 1989), and *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964). Not investigating as much as the subject would like isn't evidence of malice; only evidence that the speaker purposely avoided the truth rises to that level. *Hearst Corp. v. Skeen*, 159 S.W.3d 633, 637 (Tex. 2005) The trial court found only one potentially false

statement: that Siegler came to court hung over. Thus, the firm must show that Morin knew (or entertained serious concerns that) that statement was false. *Huckabee*, 19 S.W.3d at 420, citing *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

Kleinhans claims three clear and specific evidences of malice:

- Morin filed bar complaints about her and Siegler.

- Morin sent her crass and angry emails.

- Kleinhans has a low opinion of Morin — she thinks him dishonest, disrespectful, and of poor conduct — and believes that he "intends to do harm to [her] and the firm[.]"

CR 495. Whether taken together or separately, these do not create a prima facie case.

First, filing grievances with the State Bar isn't malicious. It may show spite or ill will; it may even show a desire to create trouble for the lawyer who is being grieved. But this is malice in the world of defamation law; the act of filing a grievance doesn't show a knowing or reckless disregard for the truth. It shows that the speaker sent a complaint to the State Bar's Chief Disciplinary Council claiming that a lawyer violated the Disciplinary Rules of Professional Conduct. The firm couldn't even create a circumstantial case of malice based on statements in the grievances: Kleinhans doesn't know what they said and admits that she is guessing at their contents based on Morin's Yelp review. CR 495.

Second, the Disciplinary Counsel's dismissal of Morin's grievances didn't inform Morin that the statements in those grievances were false. Kleinhans's conclusion to the contrary, CR 495, is wrong. The Disciplinary Counsel can dismiss grievances for at least two reasons: the "grievance" doesn't appear to be an attempt to complain about professional misconduct, and the grievance actually doesn't allege actions that, if true, would constitute professional misconduct. Tex. R. Discip. P. 1.06(R), (S) (definitions of "grievance" and "inquiry"); 2.10 (disciplinary counsel must sort grievances into complaints and inquiries and dismiss inquiries with notice to griever and lawyer). A dismissal on either basis tells Morin only that his phrasing didn't appear to allege a violation of the disciplinary rules. It doesn't tell him that what he observed never happened; it doesn't tell him that his statements — here, statements about Siegler's hangover, if he even made them in the grievance — are "false" or "baseless." *See* CR 495.

Third, Morin's emails don't show a disregard for the truth. They show what might be called "traditional" malice — antipathy, ill will, and spite. Several of them are overtly hostile. They make clear his opinion of Kleinhans and the firm and suggest that he plans to broadcast that opinion of the firm far and wide. They state his hope that his broadcasts will inform a lot of people of that opinion. But none suggests that Morin intends to lie about the firm. They don't suggest that he will concoct a story about Siegler. They don't suggest that he will

think back on his court date with Siegler and throw out doubts he had about Siegler's condition. They don't suggest that Morin was avoiding people who he knew could confirm or deny Siegler's condition. They don't, simply, allege malice.

Finally, the Court can disregard Kleinhans's opinion of Morin. That is no more evidence of malice than Morin's opinion that Kleinhans is a "shi**y lawyer," *see* Appx. 1 & 3, is evidence of malpractice. But let's assume that Kleinhans isn't simply opining; let's assume she is stating that Morin is, as a matter of fact, of poor conduct, dishonest, and disrespectful. Those aren't admissible evidence; they are naked, conclusory assertions. The most Kleinhans does to develop a basis for her statement is a footnote. She claims there that unspecified emails demonstrate Morin's dishonesty by showing that he tried to get out of a mediated settlement agreement and a Rule 11 agreement after they were signed. CR 495 at fn.2. Let's assume again, this time that the emails exist (Morin's counsel can't find them in the 100ish pages of emails attached to Kleinhans's affidavits): So what? Changing one's mind is no evidence of dishonesty. Having second thoughts is so common an occurrence that it has spawned multiple turns of phrase — "second thoughts," for one; "cold feet," "takebacks," "buyer's remorse," "l'esprit d'escalier," for others.

"Trust me; this is right" doesn't get testimony in when it's from an expert. *See Pollock*, 284 S.W.3d at 818, citing *Burrow v. Arce*, 997

33

S.W.2d 229, 235 (Tex. 1999). Nor does it get testimony in from lay-men. *See Life Ins. Co. of Va. v.Gar-Dal, Inc.*, 570 S.W.2d 378, 381–82 (Tex. 1978). It doesn't get Kleinhans's testimony in here.

## B. Morin acted timely.

Morin's papers were filed on time, and he set the hearing on his motion on time — his actions were made timely because he had good cause for making them when he did. The trial court's rulings to the contrary were an abuse of discretion.

If there is good cause to do so, a court can extend deadlines under the Act. TEX. CIV. PRAC. & REM. CODE §§ 27.003, 27.004(a), (c). While the Act doesn't define "good cause" for an extension, the Supreme Court has held in similar contexts that "good cause" exists when even the party's act or omission "was not intentional or the re-sult of conscious indifference" and the other party will suffer "no un-due delay or otherwise" be injured. *In re M.N.*, 262 S.W.3d 799, 804 (Tex. 2008), quoting *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687–88 (Tex. 2002), citing in turn *Stelly v. Papania*, 927 S.W.2d 620, 622 (Tex. 1996). This test has also been phrased as find-ing good cause when "a slight excuse" exists and the opposing party "is not injured[.]" *Employers Ins. of Wausau v. Halton*, 792 S.W.2d

462, 466 (Tex. App. – Dallas 1990, writ denied), cited with approval in *Stelly*, 927 S.W.2d at 622 (Tex. 1996).

Morin meets that test for both the exhibits and the hearing. In neither instance was he intentionally or indifferently disregarding the case schedule; in both instances, the firm suffered no prejudice.

### 1. The hearing was timely.

A motion to dismiss under the Act has to be heard by the 60th day after it is filed, a deadline that good cause allows to be extended to 90 days. TEX. CIV. PRAC. & REM. CODE § 27.003(a). While the motion is pending, discovery is stayed. TEX. CIV. PRAC. & REM. CODE § 27.003(c). Morin's attempts to resolve the parties' discovery disputes amicably was good cause to permit that extension here.

Morin's lawyer attempted, on several occasions over several months, to reach a discovery agreement so that the parties wouldn't have to ask the trial court to referee a discovery fight. *See* TEX. LAWYER'S CREED, art. III, preamble ("A lawyer owes to opposing counsel … courtesy, candor, [and] cooperation…."); *id.* at ¶ 8 ("I will attempt to resolve by agreement my objections to … discovery requests and responses."). The firm insisted that it was entitled to, and needed, answers to every request it had propounded. It couldn't have been surprised that Morin didn't send discovery responses; Morin's

counsel said repeatedly that the firm wasn't entitled to them, so Morin wasn't going to give them.

Despite this, the firm never asked the trial court for permission to take discovery, which the Act specifically allows. TEX. CIV. PRAC. & REM. CODE § 27.006(b). Nor, contrary to its argument that Morin should have answered the discovery before he filed his motion, did it ever move to compel Morin's responses. Even once Day 60 came and went — and, according to the firm's theory, Morin's motion (and the attendant stay) went kaput — the firm did nothing. Morin nonetheless willingly — indeed, voluntarily and gratuitously — furnished discovery responses on his own that were related to the issues raised in the motion to dismiss. CR 159–173. It wasn't until Morin obtained a hearing date for the motion (and the firm detonated a paperwork bomb of exactly the sort that Morin had hoped to avoid) that the discovery became important enough for the firm to do anything but send emails. Morin's attempts to reach an amicable resolution, coupled with the lack of activity from the firm, gave no reason for Morin to believe that the firm's discovery stance was anything other than a negotiating ploy.

And even once Morin set the motion for a hearing on Day 90, the firm identified no prejudice it would suffer from a hearing after Day 60. The extension — not to mention the extra week that passed because of the trial court's recess — in fact gave the firm extra time. The

circumstances suggest no prejudice, either; the firm was able to secure affidavits from the two controverting witnesses on what it claims was to-short notice, and it identified no other testimony that it would have (or could have) gotten had it had more time. Even if it had done so, Morin offered to give the firm the time it thought it needed to muster a response under the Act as long as doing so wouldn't waive his own rights under the Act. CR 189.

This behavior — attempts at concord rather than dragging discovery disputes before the court; offers to extend deadlines — is not deliberate indifference toward the law's requirements; it is diligence in attempting to maintain a professional and courteous relationship. Texas encourages parties to reach agreements rather than subject disputes to litigation whenever possible; she will not discourage litigants in her courts from doing the same thing, especially when her legal profession has enjoined its members to do so. The firm took no action. It suffered nothing. There was good cause to permit the hearing on Day 90, and the trial court's ruling to the contrary was error.

### 2. Morin's exhibits were timely.

The same reasoning applies to Morin's exhibits. The motion to dismiss was due on December 1, the 60th day after Morin was served with citation and the day that he filed it. TEX. CIV. PRAC. & REM. CODE § 27.003(b). The motion referred to and described Morin's

exhibits; many of them were copies of web pages to which he also furnished hyperlinks. *See, e.g.*, CR 26–27. For Morin to intend to secret the exhibits from examination while simultaneously discussing them, citing to them, and hyperlinking to them would be odd, to say the least. It is no wonder that the reason the exhibits were filed two days later instead of with the motion is simply, as Morin's counsel attested, that Morin's counsel forgot to attach them to the motion. Appx. 2 at 18. This is neither deliberate disregard on conscious indifference.

And, as with the hearing date, the firm wasn't prejudiced because the exhibits were filed on December 3 instead of December 1. It had three months to examine the exhibits before the hearing, two of those months before the firm's own self-described hearing deadline. Forgetting to attach the exhibits and not seeing them for 48 hours did nothing to surprise the firm or prevent it from preparing a response. There was good cause for the trial court to permit the exhibits, and its ruling to the contrary was error.

## C. Morin's evidence of attorneys' fees was uncontested, and he is entitled to additional fees and sanctions.

Morin's lawyer attested to the reasonableness and necessity of his fees. His affidavit doing so included an itemized statement and was on file for more than 30 days before the trial court heard the motion to dismiss. CR 90–93. The firm didn't file a controverting affidavit within those 30 days. Morin's evidence of his legal fees as of the time of his

38

motion — fees of $7,723.50[3] — was therefore uncontroverted and sufficient to support a judgment awarding those fees. Tex. Civ. Prac. & Rem. Code § 18.001. The Act requires that he be awarded those fees. Tex. Civ. Prac. & Rem. Code § 27.009(a)(1). The court should render judgment doing so.

Morin's other fees weren't contested, either, but expecting them to be contested when they were reported only on the day that the hearing resumed would be unreasonable. *See* Appx. 2 at 2. The Court should remand so the trial court can determine the appropriate fee to award. Similarly, the trial court didn't decide on an appropriate monetary sanction against the firm to deter it (and other subjects of disliked speech) from filing similar suits in the future. That sanction is mandatory. Tex. Civ. Prac. & Rem. Code § 27.009(a)(2). The Court should sever and remand so the trial court can determine the proper fee and sanction awards.

## Conclusion

Morin prays that the Court reverse the trial court's denial of his motion to dismiss, render judgment dismissing the case and awarding him $7,723.50 in legal fees, and sever and remand the issue of Morin's

---

[3]    The declaration attested to more fees, but it includes an error: Morin's lawyer billed for 6.8 hours on December 1. *See* CR 93.

post-motion legal fees and the appropriate sanction to impose against the firm for filing this suit.

Respectfully submitted,

The Olson Firm, PLLC

/s/ Leif A. Olson

Leif A. Olson
  State Bar No. 24032801
  leif@olsonappeals.com
PMB 188
4830 Wilson Road, Suite 300
Humble, Texas 77396
**Counsel for appellant**
**Levi Morin**

## Certificate of Compliance

This *Brief of Appellant Levi Morin* was prepared with Microsoft Word 2013. According to that program's word-count function, the sections covered by Texas Rule of Appellate Procedure 9.4(i)(1) contain 6,801 words.

/s/ Leif A. Olson

## Certificate of Service

On June 11, 2015, I served this *Brief of Appellant Levi Morin* and its Appendix upon the appellee's counsel by e-filing:

Kimberly G. Kleinhans
kim@lawofficeofkg.com
Law Office of Kleinhans Gruber, PLLC
12600 Hill Country Blvd., Suite R-275
Austin, Texas 78738
(512) 961-8512

/s/ Leif A. Olson

No. 03-15-00174-CV

# THIRD COURT OF APPEALS
## AT AUSTIN

Levi Morin,
Appellant,

v.

Law Office of Kleinhans Gruber, PLLC,
Appellee.

Appeal from the 201st District Court
of Travis County
Trial Court No. D-1-GN-14-003874

### APPENDIX TO BRIEF OF APPELLANT LEVI MORIN

Leif A. Olson
 State Bar No. 24032801
 leif@olsonappeals.com
The Olson Firm, PLLC
PMB 188
4830 Wilson Road, Suite 300
Humble, Texas 77396
(281) 849-8382

**Counsel for
Appellant Levi Morin**

## Appendix Contents

Document                                                                                    Tab

Original and amended Yelp reviews ....................................................... 1

Supplemental Declaration of Leif Olson ............................................... 2

Texas Citizens Participation Act .......................................................... 3

Amended Order on Motion to Dismiss ................................................. 4

Notice of Appeal ................................................................................. 5

## Tab 1

Original and amended Yelp reviews
CR 49–51; CR 498–500 (original)
CR 57–59; CR 503–506 (amended)



# Law Office of Kleinhans Gruber, PLLC

 3 reviews    Details

Personal Injury Law, Divorce & Family Law







**700 Lavaca St**                                                    Edit
**Ste 1400**
**Austin, TX 78738**
Downtown
Get Directions

   (512) 961-8512
   lawofficeofkg.com

Law Office of KG, PLLC
managing… by Kimberly G.

## Recommended Reviews

Search reviews

Yelp Sort | Date | Rating | Elites                                English **3**

| | |
|---|---|
| **Debbie W.** |  8/17/2014 |
| Eddyville, KY | |
| **0** friends | |
| **1** review | |

Law office of Kleinhans Gruber has been my rock through some very emotional and rough times. Kim is very knowledgeable in family law. She has been by my side and has kept me grounded and focused on what my objectives were. I admire her ethical and heart felt professional attitude. Kim has helped me beyond and above the duties of being my attorney. Kim has done more for me then I ever expected form a law firm/attorney. She has understood my financial difficulties and has helped me as much as possible, so I could afford to defend myself from a very stressful situation.
When I tell friends and family what Kim has done for me, they are thrilled that I found such a compassionate lawyer. Kim is very professional and knows how to conduct herself in a court room. She continues to help me when I need her, I have found that it's not all about money for Kim. Nobody can or does work for free, but I know when I retain Kim's services I get all my monies worth and more. Thank you Kim for being beside me through all this legal stuff. You are the best. I'm so glad people have the opportunity to experience how a real lawyer should conduct themselves.

Thanks for Everything
Debbie W.



**Levi M.**                            6/24/2014
Fredericksburg, TX
**0** friends              First to Review
**2** reviews

You will be doing the majority of the work you'll be paying Kimberly $400 and hour to do for you. I am all for being involved in the process but Kimberly only cares about her

**Today 8:00 am - 6:00 pm** Open now

### Hours

| | | |
|---|---|---|
| **Mon** | 8:00 am - 6:00 pm | Open now |
| **Tue** | 8:00 am - 6:00 pm | |
| **Wed** | 8:00 am - 6:00 pm | |
| **Thu** | 8:00 am - 6:00 pm | |
| **Fri** | 8:00 am - 6:00 pm | |
| **Sat** | 11:00 am - 2:00 pm | |
| **Sun** | Closed | |

Edit business info

### More business info

**Levi M.**
First to review

### People Viewed This After Searching For…

Law Office Of Kg Austin

paycheck and not at all about me, or her clients presumably. For someone so expensive her legal "counsel" consist of her arguing with you or sending hung over "associates" to court dates[Michael Seigler].

As well as almost doing nothing for me, in the way of leading me through an overly complex legal system and helping to understand what's going on within it, she does not even know the basics of the laws she claims to specialize in. She told me to call the police and that they would make my ex give me my son for our court appointed time. Anyone who's had to deal with the cops when they show up knows that they can't force anyone to give children to someone else. Any good fathers, or moms, out there who are trying to get a fare shake should steer clear of Kim. On multiple occasions she has proven her worth, or lack thereof, with shitty legal advice, questionable associates, and sub-par management.

I'm a great dad with a crappy ex and in Texas that means playing the long game when it comes to getting what you should have as a father. That means that in the here and now you're paying a lawyer for piece of mind and to set yourself up for success latter on down the road. You're not going to get that with Kimberly and that's really surprising given the recommendation from Blake Erskine.

---



**Jason C.**
Austin, TX
0 friends
1 review

 8/15/2014

I have had multiple experiences with several Attorneys over the years. It always felt I overpaid for results that were not to my liking. I originally contacted the Law Office of KG in search of legal representation with regards to a Child Custody and Support issue I was currently in the middle of. It seemed every time I went to court with my other Attorney's I was left feeling like I had once again been railroaded by the judicial system.

Feeling like I had previously felt retaining attorneys I was skeptical in hiring another attorney and receiving the same results as previously mentioned. At this point in time the decision I was about to make was one of the most critical because I was a hard working father seriously overpaying for child support and having little to no contact with my children. This decision is one that if wrong would have life changing consequences. I hired them!

At the first court appearance I was not going to accept nothing less than the best. Kimberly met me at the courthouse and appeared ready for battle. Not knowing anything about court proceedings and the terminology I was really confused I wasn't sure what the initially outcome was going to be. After the Judge made his temporary ruling Kimberly explained to me what had happened my child support was lowered and two days later my babies were back in my arms.

As I mentioned earlier the Judges ruling was temporary. Having my kids and paying lower child support was GREAT but I knew this would not go uncontested by my ex and a new trial date was set. This was the WAR. To my surprise Kimberly and Keith meet me at the courthouse yet I still I felt a little scared and intimidated. Kimberly and Keith reassured me everything would be fine. The proceedings (WAR) went all day and into the following day is was a straight up a knock down drag out fight.

The Judge came into the courtroom and I was ready for results. Same as before the terminology and process had

me confused. After the judge made his ruling Kimberly explained to me what the outcome was. I now had my children 4 days every other week and the child support was even lowered more. This went way above and beyond my expectations. The "WAR" was over and it was a clean sweep!

A year went by and life is good. Kids are happy and Dad was very happy. However, over the year we could still not get my ex or opposing Attorney to sign the Final Order. This meant we had to go back. This time the uneasy, awkward and scared feeling I had before was no longer there. I knew who was representing me and knew I was in good hands. There was a minor dispute, my ex hired another attorney, probably because of the previous results. Guess what? Kimberly not only got it finalized but even got me better results then before. Now no matter when I'm off I get to see my children and the child support lowered even further.

If any issues EVER come into my life that requires me hire a law firm. The Law of KG is the ONLY option for me. If I ever have another daughter I may just name her Kimberly. J/K. Kimberly, Keith and the rest of the team keep up the good work! I want to thank you so much for the personalized service and the professional level of service your firm offers.

Page 1 of 1

1 other review that is not currently recommended

## From the business

**Specialties**

Law Office of KG, PLLC is a law firm located in Austin, Texas. The attorneys, Kimberly Gruber Kleinhans and Keith L. Kleinhans, represent clients in general litigation, and personal injury cases all over the state of Texas. Kimberly and Keith also focus on family law in Travis and contiguous counties. We offer free attorney consultations and flexible office hours.

**Best of Yelp** Austin – Personal Injury Law



**Batrice Law Firm**
8 reviews



**Rubin Law Firm, PLLC**
9 reviews



**Shefman Law Group**
10 reviews



**Joshua A Fogelman**
5 reviews



**Whitehurst, Harkness, Brees, Cheng, Alsaffar & Higginbotham PLLC**
4 reviews

See More

**About**

About Yelp

Yelp Blog

**Help**

FAQ

Advertise

**More**

Careers

Yelp Mobile

**Languages**

English

http://www.yelp.com/biz/law-office-of-kleinhans-gruber-pllc-austin?osq=law+office+of+kg                    3/4

# Law Office of Kleinhans Gruber, PLLC - Downtown - Austin, TX | Yelp



| Find | Near | **Sign Up** |

## Law Office of Kleinhans Gruber, PLLC

3 reviews    Details

Personal Injury Law, Divorce & Family Law    Edit

**Write a Review**    Add Photo | Share | Bookmark



**700 Lavaca St**
**Ste 1400**
**Austin, TX 78738**
Downtown
Get Directions

(512) 961-8512
Message the business
lawofficeofkg.com

Law Office of KG, PLLC managing… by Kimberly G.

## Recommended Reviews

Yelp Sort   Date   Rating   Elites                          English 3

**Your trust is our top concern,** so businesses can't pay to alter or remove their reviews. Learn more.   ✕

**Rowena O.**
Austin, TX
1 friend
6 reviews

8/15/2014

I have had the pleasure of working with both of these Attorneys. Kim and Keith I must say I'm extremely happy with their services. Kim and Keith have been instrumental in my custudial case as well as my personal injury case. As a mom, I wanted what was best for children.  The legal expertise that Kim and Keith provided was definitely benificial in conveying the nuances of my case.

Unfortunately while going through that I was involved in a car accident which left me financially struggling. I was appreciative that they were willing to work with me and provide payment options for me. Especially at a time when I really needed it.

I am so thankful for this platform because it has allowed me to praise 2 hard working professionals who dedicate themselves to their clients and strive for a win win outcome.

Was this review …?

Useful 2    Funny    Cool

**Levi M.**
Fredericksburg, TX
2 friends
5 reviews

6/24/2014

First to Review

You will be doing the majority of the work you'll be paying Kimberly an exorbitant amount to do for you. I am all for

### Today  8:00 am - 6:00 pm  Open now

#### Hours

| | |
|---|---|
| **Mon** | 8:00 am - 6:00 pm |
| **Tue** | 8:00 am - 6:00 pm |
| **Wed** | 8:00 am - 6:00 pm   Open now |
| **Thu** | 8:00 am - 6:00 pm |
| **Fri** | 8:00 am - 6:00 pm |
| **Sat** | 11:00 am - 2:00 pm |
| **Sun** | Closed |

Edit business info

 **Levi M.**
First to review

#### People also viewed

 **Law Office of Brandon Bledsoe**
3 reviews

 **Brian Guerra**
4 reviews

 **The Foxhoven Law Firm**
1 review

#### Browse nearby

Restaurants, Nightlife, Shopping, Show all

being involved in the process but Kimberly only cares about her paycheck and not at all about me, or her clients presumably. For someone so expensive her legal "counsel" consist of her arguing with you or sending hung over "associates" to court dates[Michael Seigler].

As well as almost doing nothing for me, in the way of leading me through an overly complex legal system and helping to understand what's going on within it, she does not even know the basics of the laws she claims to specialize in. She told me to call the police and that they would make my ex give me my son for our court appointed time. Anyone who's had to deal with the cops when they show up knows that they can't force anyone to give children to someone else. Any good fathers, or moms, out there who are trying to get a fare shake should steer clear of Kim. On multiple occasions she has proven her worth, or lack thereof, with shitty legal advice, questionable associates, and sub-par management.

I'm a great dad with a crappy ex and in Texas that means playing the long game when it comes to getting what you should have as a father. That means that in the here and now you're paying a lawyer for piece of mind and to set yourself up for success later on down the road. You're not going to get that with Kimberly and that's really surprising given the recommendation from Blake Erskine.

**Was this review …?**

Useful 2 | Funny | Cool

---

 **Comment from Kim K. of Law Office of Kleinhans Gruber, PLLC**
Business Owner

· 9/23/2014 · We have attempted to reach out to Levi M. due to the false and misleading reiteration of information posted in this review. When we approached him requesting to discuss this review on the phone or in an in person meeting, he responded in part, "Go F*** Yourself". In general, when a client cannot follow the attorneys advice and/or treat the attorney with respect, termination of the client is unfortunately necessary, and likewise, the terminated client's opinion of services they no longer have a privilege to enjoy, is clearly misplaced. Our firm strives to provide a balance of high quality service, while keeping billing to a minimum, as is exhibited in our other legitimate reviews. It is also important to note that all of the attorneys in our firm were selected as Super Lawyers Rising Stars, which only consists of 2.5% of attorneys in the nation whom are chosen by a high-degree of peer recognition and professional achievement. Read less

---

 **Benjamin S.**
**Austin, TX**
11 friends
11 reviews

12/1/2014

Keith and Kim are the most honest and professional attorneys I have ever had the pleasure of coming across. Furthermore, they are very knowledgeable, full of integrity, and very detail oriented...not to mention super friendly! These traits are quintessential in legal representation and are very hard to find in this profession. Their vast knowledge and experience regarding a variety of legal topics continue to uphold my trust in them. They are without question the only law office that I would highly recommend to my friends and family.

**Was this review …?**

Useful 1 | Funny 1 | Cool

---

Page 1 of 1

4 other reviews that are not currently recommended

**People Viewed This After Searching For…**

Law Office Of Kg Austin

Family Law Attorney Austin

# From the business

**Specialties**

Law Office of KG, PLLC is a law firm located in Austin, Texas. The attorneys, Kimberly Gruber Kleinhans and Keith L. Kleinhans, represent clients in general litigation, and personal injury cases all over the state of Texas. Kimberly and Keith also focus on family law in Travis and contiguous counties. We offer free attorney consultations and flexible office hours.

**Best of Yelp** Austin – Personal Injury Law



**Batrice Law Firm**
8 reviews



**Rubin Law Firm, PLLC**
9 reviews



**Joshua A Fogelman**
5 reviews

See More

## About

About Yelp

Careers

Press

Investor Relations

Content Guidelines

Terms of Service

Privacy Policy

Ad Privacy Info

## Discover

The Weekly Yelp

Yelp Blog

Support

Yelp Mobile

Developers

RSS

## Yelp for Business Owners

Claim your Business Page

Advertise on Yelp

Yelp SeatMe

Business Success Stories

Business Support

Yelp Blog for Business Owners

## Languages

English

## Countries

United States

Austin Business Listings  #  A  B  C  D  E  F  G  H  I  J  K  L  M  N  O  P  Q  R  S  T  U  V  W  X  Y  Z  | Newly Added

Site Map  Atlanta | Austin | Boston | Chicago | Dallas | Denver | Detroit | Honolulu | Houston | Los Angeles | Miami | Minneapolis | New York | Philadelphia | Portland | Sacramento | San Diego | San Francisco | San Jose | Seattle | Washington, DC | More Cities

Copyright © 2004–2014 Yelp Inc. Yelp, yelp, and related marks are registered trademarks of Yelp.

**Tab 2**

Supplemental Declaration of Leif Olson
SR ___-___

No. D-1-GN-14-003874

LAW OFFICE OF KLEINHANS
  GRUBER, PLLC

v.

LEVI MORIN

201st District Court
Travis County, Texas

**Supplemental Declaration of Leif Olson
in Support of Morin's Motion to Dismiss**

1. I am in all ways competent to make a declaration, and the facts in this declaration are within my personal knowledge.

2. My State Bar of Texas webpage profile doesn't mention "defamation" or "constitutional law" as areas of practice because those aren't available options. Exhibit N-1 is a true and correct screenshot that I took of the State Bar's webpage showing the options available to check.

3. I didn't mention defamation on my campaign website because I didn't believe that experience in defamation law was an important enough factor to primary voters to spend time on. I didn't mention my experience with constitutional-law cases because my experience is that people who boast that they are "constitutional lawyers" are simply puffing.

4. I have handled more than a half-dozen defamation and business disparagement claims in my private practice. One of them proceeded to trial, where we dropped the defamation claim before the case was submitted to the jury. Each of the others was disposed of before trial; two of those were disposed of before suit was filed.

5. I live in Humble, not Dallas. I practice in Houston, not Dallas.

6. I don't produce "form answers" or any other "form" pleadings. The forms I use in my practice furnish a shell in which I place substance and include reminders of important topics to be included in the particular document. The issues that clients bring to me don't lend themselves to "form" practice; I individually craft each document that I produce for them. When that crafting consumes time that I consider to be unproductive or in excess of a client's expectations, I write it off.

7. The invoices attached to this declaration as Exhibits N-2 through N-5 are, save for the redactions, true and correct copies of the invoices I created and sent to Morin in this case. I create these invoices based on rec-

ords I keep in the usual course of my business. It is my practice to make those records at roughly the same time as I perform the tasks. I regularly rely on these records in running my law firm.

8. Each charge listed on each invoice was reasonable and necessary for me to represent Morin in this matter. The only exception is the charge on February 23, 2015, which was for work that was reasonably necessary to represent Morin but wasn't necessary to achieve a dismissal. The invoices thus reflect reasonable and necessary fees and expenses through February 28, 2015, of $12,195.54. This amount has increased between March 1 and today by my usual hourly rate of $285 per hour.

9. I never got a copy of the "subpoena" that the firm sent to Martin Garza until March 3, 2015, when Kim Kleinhans emailed it to me attached to his affidavit. A true and correct copy of the subpoena and affidavit I received from her are attached as Exhibit N-6.

10. The timeline attached to this declaration as Exhibit N-7 is a true and accurate representation of my communications with Kim Kleinhans and the KG firm throughout this case. It is based on my personal recollections as well as the records I make in the usual course of business of my practice, which are made at roughly the same time as the activity they document and on which I rely in my practice.

> My name is Leif Alexander Olson. I was born on October 10, 1975. My mailing address is PMB 188, 4830 Wilson Road, Suite 300, Humble, Texas 77396. I declare under the penalty of perjury that the statements in this declaration are true and correct.

Signed in Harris County, Texas, on March 5, 2015.

_____
Leif A. Olson

## My law practice is focused in the following areas

| | |
|---|---|
| ☐ Administrative and Public | ☐ ADR |
| ☐ Antitrust | ☑ Appellate: Civil |
| ☑ Appellate: Criminal | ☐ Aviation |
| ☐ Bankruptcy | ☐ Business |
| ☐ Collaborative Law | ☐ Construction |
| ☑ Consumer | ☐ Creditor-Debtor |
| ☐ Criminal | ☐ Disability Law |
| ☐ Elder Law | ☐ Entertainment |
| ☐ Environmental | ☐ Ethics-Legal Malpractice |
| ☐ Family | ☐ Finance |
| ☐ Government/Administrative | ☐ Health Care |
| ☐ Immigration | ☐ Insurance |
| ☐ Intellectual Property | ☐ International |
| ☐ Juvenile | ☐ Labor-Employment |
| ☐ Law Office Management | ☐ LGBT Law |
| ☑ Litigation: Commercial | ☐ Litigation: Personal Injury |
| ☐ Military | ☐ Non-Profits |
| ☐ Oil & Gas | ☐ Other |
| ☐ Public Utility | ☐ Real Estate |
| ☐ School Law | ☐ Securities Law |
| ☐ Social Security Law | ☐ Taxation |
| ☐ Technology | ☑ Wills-Trusts-Probate |
| ☐ Workers' Compensation | |

Exhibit N-1



# Invoice No. 036-1

December 4, 2014

Levi Morin
165 South Guadalupe #222
San Marcos, Texas 78666

Matter: SLAPP case by Kleinhans Gruber

Firm matter number: 1419

**for services through December 3, 2014**

### Legal work

| Date | Task | Hours | Amount |
|------|------|-------|--------|
| 10/7/2014 | Review petition; review correspondence; draft initial letter responding to lawsuit; correspond with client regarding interactions with KG firm; set deadlines on calendar; outline special motion to dismiss. | 1.8 | 513.00 |
| 10/27/2014 | Draft answer and special exceptions; telephone conference with K. Kleinhans regarding special exceptions; edit answer to delete special exceptions; research local rules regarding filings, submissions, and assignment of proceeding to single judge; revise letter regarding response to lawsuit; file and serve answer; review correspondence from K. Kleinhans; send letter response to lawsuit. | 3.3 | 940.50 |
| 11/25/2014 | Research cases on business disparagement and defamation per se; draft fact section of motion to dismiss; begin to draft standard section of motion. | 3.1 | 883.50 |
| 11/26/2014 | Research additional defamation and disparagement cases; draft argument, fact, and standards section of motion. | 2.8 | 798.00 |
| 11/29/2014 | Research damages available in defamation cases and standards for awards; revise fact section; continue drafting argument section. | 5.1 | 1453.50 |
| 11/30/2014 | Continue drafting argument section; begin revisions and editing; draft affidavits. | 4.2 | 1197.00 |

Exhibit N-2

| Date | Description | | |
|---|---|---|---|
| 12/1/2014 | Complete first round of revisions to brief; continue revisions to brief; gather exhibits to motion; finalize affidavits; finalize, file, and serve brief. | 6.8 | 1938.00 |
| 12/3/2014 | Finalize and file revised version of motion with attachments and proposed order. | 0.3 | 85.50 |
| | *write off of fees for refiling motion to dismiss* | -0.3 | -85.50 |
| | **Total legal work this invoice** | **27.1** | **$7,723.50** |

## Expenses

| Date | Expense | Amount |
|---|---|---|
| 10/27/2014 | Filing fee (answer) | 2.21 |
| 12/1/2014 | Filing fee (motion to dismiss) | 2.21 |
| 12/3/2014 | Filing fee (motion to dismiss) | 2.21 |
| | *write off of fee for refiling motion to dismiss* | -2.21 |
| | **Total expenses for this invoice** | **$  4.42** |

## Totals

| Items | Date | Amount | Balance |
|---|---|---|---|
| Total for this invoice | 12/5/2014 | 7,727.92 | 7,727.92 |
| Outstanding balance | | 0 | 0 |
| Payments received | | 0 | 0 |
| Payments deducted from trust account | 12/4/2014 | 2,032.50 | 5,695.42 |
| | **Total amount now due** | **$  1,032.50** | |

*Please note on your check that your payment is for Invoice 036-1.*

## Trust Statement

| Date | Transaction | Amount |
|------|-------------|--------|
| 11/6/2014 | Deposit of retainer | 2,500.00 |
| 12/4/2014 | Payment of fees for Invoice 36-1 | -2,032.50 |
| | **Trust account balance** | **$ 467.50** |
| | **Payment required to replenish deposit** | **$ 1,032.50** |



January 5, 2015

Levi Morin
165 South Guadelupe #222
San Marcos, Texas 78666

Matter: SLAPP case by Kleinhans Gruber

Firm matter number: 1419

**for services from December 4, 2014, through December 31, 2014**

### Legal work

| Date | Task | Hours | Amount |
|------|------|-------|--------|
| 12/8/2014 | Telephone conference with client ███████████████; compose email to client ████████████. | 0.3 | 85.50 |
| 12/18/2014 | Follow-up emails with client ████████████. | 0.1 | 28.50 |
| 12/22/2014 | Correspond with K. Gruber on response to settlement offer, counter-offer, dates for hearing, client′s outstanding fees, discovery responses, KG′s nonsuit, and results of nonsuit. | 1.4 | 399.00 |
| 12/30/2014 | Respond to KG settlement offer; check court schedule for dates to argue motion to dismiss; send email to K. Gruber seeking dates for motion to dismiss. | 0.3 | 85.50 |
| 12/31/2014 | Review correspondence from KG regarding dates unavailable for trial or hearings. | 0.1 | 28.50 |
| | **Total legal work this invoice** | **2.2** | **$ 627.00** |

### Totals

| Items | Date | Amount | Balance |
|-------|------|--------|---------|
| Total for this invoice | 1/4/2015 | 627.00 | 627.00 |
| Outstanding balance | Invoice 036-1: 12/5/2014 | 5,695.42 | 6,322.42 |
| Payments deducted from trust account | 1/4/2015 | 165.00 | 6,157.42 |
| **Total amount now due** | | | **$ 0.00** |

Exhibit N-3

## Trust Statement

| Date | Transaction | Amount |
|------|-------------|--------|
| 12/4/2014 | Balance as of Invoice 036-1 | 467.50 |
| 12/11/2014 | Deposit replenishment | 1032.32 |
| 1/4/2015 | Payment for Invoice 036-2 | -165.00 |
| | **Trust account balance** | **$1,334.82** |
| | **Payment required to replenish deposit** | **$ 165.18** |

*Please mail payment to:*

### THE OLSON FIRM, PLLC
Tax ID No. 46-2442544

PMB 188
4830 Wilson Road, Suite 300
Humble, Texas 77396



February 3, 2015

Levi Morin
165 South Guadelupe #222
San Marcos, Texas 78666

Matter: SLAPP case by Kleinhans Gruber

Firm matter number: 1419

## for services from January 1, 2015, through January 31, 2015

### Legal work

| Date | Task | Hours | Amount |
|------|------|-------|--------|
| 1/6/2015 | Telephone conference with Disciplinary Counsel's office regarding complaints against KG; correspond with client regarding ▮▮▮▮▮▮▮▮▮; review correspondence from K. Kleinhans regarding discovery and hearing dates. | 0.3 | 85.50 |
| 1/19/2015 | Schedule telephone conference with K. Kleinhans. | 0.1 | 28.50 |
| 1/28/1930 | Telephone conference with K. Kleinhans regarding hearings and discovery. | 0.3 | 85.50 |
| 1/30/2015 | Draft responses to discovery requests. | 1.5 | 427.50 |
| | **Total legal work this invoice** | **2.2** | **$ 627.00** |

### Totals

| Items | Date | Amount | Balance |
|-------|------|--------|---------|
| Total for this invoice | 2/3/2015 | 627.00 | 627.00 |
| Total amount due | | $75/hr * 2.2hr | 165.00 |
| Payments deducted from trust account | 2/3/2015 | 165.00 | 462.00 |
| Outstanding balance | January 4, 2015 Invoice 036-2 | 6,157.42 | 6,619.42 |
| **Total remaining balance** | | | **6,619.42** |

Exhibit N-4

## **Trust Statement**

| Date | Transaction | Amount |
|---|---|---|
| 1/4/2015 | Balance as of Invoice 036-2 | 1,334.82 |
| 1/16/2015 | Deposit replenishment | 165.18 |
| 2/3/2015 | Payment for Invoice 036-3 | -165.00 |
| | **Trust account balance** | **$1,335.00** |
| | **Payment required to replenish deposit** | **$ 165.00** |

*Please mail payment to:*

THE OLSON FIRM, PLLC
Tax ID No. 46-2442544

PMB 188
4830 Wilson Road, Suite 300
Humble, Texas 77396



# Invoice No. 036-4

March 3, 2015

Levi Morin
165 South Guadalupe #222
San Marcos, Texas 78666

Matter: SLAPP case by Kleinhans Gruber

Firm matter number: 1419

**for services from February 1, 2015, through February 28, 2015**

## Legal work

| Date | Task | Hours | Amount |
|------|------|-------|--------|
| 2/13/2015 | Compile discovery responses; redact privileged information from bills; finalize edits to discovery responses; compose correspondence to K. Kleinhans; confirm available dates for hearing on motion; review local rules for hearing dates and announcements; check KG vacation letter to discover several dates are off-limits; draft notice of hearing; file and serve notice of hearing; serve discovery on opposing counsel; complete revisions to correspondence to K. Kleinhans and send. | 4.0 | 1140.00 |
| 2/13/2015 | *Write-off for additional time expended because of unfamiliarity with local rules* | *-1.3* | *-370.50* |
| 2/15/2015 | Correspondence with K. Gruber regarding settings and motions. | 1.1 | 313.50 |
| 2/17/2015 | Hearing on KG's motion for continuance. | 3.5 | 997.50 |
| 2/18/2015 | Review KG's first and second amended motions to strike etc.; review correspondence from K. Kleinhans; compose and send response to K. Kleinhans. | 5.6 | 532.00 |
| 2/18/2015 | Review KG's first and second amended motions to strike etc.; review correspondence from K. Kleinhans; compose and send response to K. Kleinhans. | 2.1 | 598.50 |
| 2/18/2015 | *Write off — excess time editing correspondence.* | *-0.4* | *-114.00* |
| 2/23/2015 | ██████████████████████████████ ████████████████████; send case update and settlement offer to client. | 2.5 | 712.50 |
| 2/23/2015 | *Write-off: No charge for case updates* | *-0.5* | *-142.50* |

Exhibit N-5

| Date | Task | Hours | Amount |
|------|------|------:|-------:|
| 2/27/2015 | Travel to/from Austin for hearing on motion to dismiss. | 5.6 | 532.00 |
| 2/27/2015 | *Write off: No billing for travel when work conducted during travel.* | *-5.6* | *-532.00* |
| | **Total legal work this invoice** | **16.6** | **$3,667.00** |

## Expenses

| Date | Expense | Amount |
|------|---------|-------:|
| 2/17/2015 | Mileage to/from Austin for hearing on KG's motion for continuance. | 193.20 |
| 2/17/2015 | Tolls to/from Austin for hearing on KG's motion for continuance. | 2.90 |
| 2/17/2015 | Meals for travel to/from Austin for KG's motion for continuance. | 23.20 |
| 2/17/2015 | *Write off: No travel expenses when travel is billed.* | *-219.30* |
| 2/17/2015 | Parking for hearing on KG's motion for continuance. | 10.00 |
| 2/27/2015 | Mileage to/from Austin for hearing on KG's motion for continuance. | 193.20 |
| 2/27/2015 | Tolls to/from Austin for hearing on motion to dismiss. | 2.90 |
| 2/27/2015 | Parking for hearing on motion to dismiss. | 2.00 |
| 2/27/2015 | *Other clients' share of travel expenses.* | *-98.05* |
| | **Total expenses for this invoice** | **$ 110.05** |

## Totals

| Items | Date | Amount | Balance |
|-------|------|-------:|--------:|
| Total for this invoice | 3/3/2015: Fees | 3,667.00 | 3,783.62 |
| | 3/3/2015: Expenses | 110.05 | |
| Total amount due | Fees: $75/hr * 16.6/hr | 1,245.00 | 1,355.05 |
| | Expenses | 110.05 | |
| Payments deducted from trust account | 3/3/2015 | 1,355.05 | 2,428.57 |
| Outstanding balance | February 3, 2015 Invoice 036-3 | 6,619.42 | 9,047.99 |
| | **Total remaining balance** | | **9,047.99** |

## Trust Statement

| Date | Transaction | Amount |
|------|-------------|--------|
| 2/3/2015 | Balance as of Invoice 036-2 | 1,335.00 |
| 2/15/2015 | Deposit replenishment | 165.00 |
| 2/3/2015 | Payment for Invoice 036-4 | -1,355.05 |
| | **Trust account balance** | **$ 164.95** |
| | **Payment required to replenish deposit** | **$ 1,355.05** |

*Please mail payment to:*

### THE OLSON FIRM, PLLC
Tax ID No. 46-2442544

PMB 188
4830 Wilson Road, Suite 300
Humble, Texas 77396

CAUSE NO. D-1-GN-14-003874

| | | |
|---|---|---|
| LAW OFFICE OF | § | IN THE DISTRICT COURT |
| KLEINHANS GRUBER, PLLC | § | |
|     Plaintiff, | § | |
| v. | § | 201st JUDICIAL DISTRICT |
| | § | |
| LEVI MORIN, | § | |
|     Defendant. | § | TRAVIS COUNTY, TEXAS |

<u>SUBPOENA FOR AFFIDAVIT TESTIMONY</u>

**THIS SUBPOENA IS DIRECTED TO:**    Martin Garza
The Garza Law Firm
1601 North Alamo, Suite 200
San Antonio, Texas 78215
210 354-4949
210 568-4278 fax
martin@martinsgarza.com

**Greetings:** You are hereby commanded to give testimony via affidavit in the above-named case.

**You are further instructed that the FAILURE TO OBEY THIS SUBPOENA MAY BE TREATED AS A CONTEMPT OF COURT.** Texas Rules of Civil Procedure 176.8(a), states,

> "Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both."

This subpoena is issued at the request of Plaintiff, LAW OFFICE OF KLEINHANS GRUBER, PLLC, attorney of record, Kimberly G. Kleinhans.

**Date Subpoena Issued: February 26, 2015.**

<span style="color:red">Exhibit N-6</span>

# MEMORANDUM OF ACCEPTANCE

By my signature below, I hereby acknowledge that I accepted service of a copy of this subpoena, on _3/3/_____, 2015 and I confirm I will make any appropriate changes to the attached affidavit and fax the signed copy back to 512.623.7320.

SIGNED BY:

Martin Garza

STATE OF TEXAS                    §
BEXAR COUNTY                      §


## AFFIDAVIT OF MARTIN GARZA

Before me, the undersigned notary, on this day personally appeared MARTIN GARZA, the affiant, a person whose identity is known to me. After I administered an oath to affiant, affiant testified:

1.  "My name is MARTIN GARZA. I am competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2.  On March 10, 2014, I was the opposing counsel for the setting on LEVI MORIN's Motion for Enforcement/Motion to Enter hearing.

3.  Michael Seigler represented LEVI MORIN. I spoke with Michael Seigler prior to the hearing from about 8:15AM to 8:45AM on the phone and then throughout the day on March 10, 2014. Michael Seigler handled the matter professionally and to a high ethical standard. We conferred and negotiated for approximately 6 hours on the day of the hearing. At no time did I even suspect or see any signs of intoxication.

_____
MARTIN GARZA


SWORN TO and SUBSCRIBED before me by MARTIN GARZA on March 3, 2015.



_____
Notary Public in and for
the State of Texas

CONNIE GARZA
Notary Public, State of Texas
My Commission Expires
July 16, 2016

| Date | Event |
|------|-------|
| 10/27/14 | Olson calls the firm to introduce himself and state that he is representing Morin. He leaves a voice message asking if the firm would consider putting a hold on discovery so the parties can negotiate. Kleinhans replies by email agreeing to do so. |
| | Kleinhans emails that she can't retrieve Morin's answer from the e-filing system. Olson emails it to her. |
| | Olson emails Kleinhans a letter proposing that the firm nonsuit the case rather than spend actual cost and opportunity cost pursuing claims that Morin will ask be dismissed under the Act. He notes that a TCPA motion will stay discovery. He closes by asking for a quick response and quick negotiations because the deadline to file a TCPA motion is December 1. |
| 10/28/14 | Kleinhans emails Olson asking for his fax number. Olson responds that he consents to email service of anything the firm wants to send. Kleinhans insists on the number. Olson furnishes it. |
| | The firm serves requests for production, requests for admission, and interrogatories. Kleinhans emails Olson that the firm refuses to nonsuit its case because it is serious about pursuing the case, up to and including a jury trial. She proposes a settlement that would require a payment from Morin and states that the firm will need discovery if Morin persists in seeking a TCPA dismissal. |
| 10/31/14 | Olson informs Kleinhans that Morin declines the settlement offer. He states that he will look over the discovery to see if there will be objections and asks Kleinhans for dates in December when a TCPA hearing could be set. Kleinhans responds with three dates. |
| 12/1/14 | Morin files his motion to dismiss. |
| 12/3/14 | Morin refiles his motion to dismiss, this time attaching the exhibits that his counsel forgot to attach the first time. |

**Exhibit N-7**

| | |
|---|---|
| 12/4/14 | Kleinhans emails that the recent circumstances and the firm's incredibly full docket have led it to agree to a nonsuit if Morin will remove his review.<br><br>Kleinhans also asks for a copy of Morin's complaint to the State Bar. Olson responds that Morin doesn't have a copy. |
| 12/5/14 | Olson emails Kleinhans that he is seeking a response for the firm's settlement offer. |
| 12/22/14 | Olson emails Kleinhans that Morin declines her offer. He furnishes Morin's counter-offer.<br><br>Kleinhans emails Olson that she never received Morin's discovery responses. Olson reminds her that the TCPA motion stayed all discovery. He asks if there are specific items the firm would like so he can attempt to reach an agreement on discovery rather than having to seek court intervention.<br><br>Kleinhans states that she thought that Morin would be furnishing discovery despite the stay. Olson apologizes for giving that impression.<br><br>The firm nonsuits its claims. Kleinhans tells Olson to disregard her comment about discovery because of the nonsuit and the firm's settlement offer: It will dismiss with prejudice if Morin deletes his review.<br><br>In a series of emails, Kleinhans expresses her belief that Morin's motion is rendered moot by the nonsuit. Olson responds to disagree and sends citations to cases to support his view. Kleinhans expresses her disagreement, noting that one case, in particular, wasn't decided until after the firm filed its suit. |
| 12/30/15 | Olson emails Kleinhans that Morin declines the firm's offer. He asks for dates in January for a hearing on the motion. |
| 1/5/15 | Kleinhans responds that the firm will need discovery if Morin intends to pursue his motion to dismiss. She asks for a date by which the discovery will be served and states that the firm will need a hearing on its nonsuit. |

| 1/19/15 | Olson calls to discuss whether the parties can agree to discovery and a hearing date. He reaches Kleinhans at home on her cell phone. Kleinhans expresses doubt that there is anything to discuss, but they set a call for January 21. |
|---|---|
| 1/21/15 | Olson emails to apologize for not being able to call and asking for a time to schedule another call. |
| 1/26/15 | Kleinhans's office leaves a voicemail asking to reschedule the conference. Olson returns the call and later emails that a Wednesday conference is fine. |
| 1/28/15 | Olson and Kleinhans confer by telephone regarding the motion to dismiss and the firm's discovery requests. Kleinhans states that she doesn't think there is anything to discuss; the firm needs the discovery, and it needs all of the discovery, and it won't agree to limit its requests. Olson again states that the firm isn't entitled to discovery and that Morin doesn't intend to respond to it, but he is happy to discuss an agreement for limited production. <br><br> Kleinhans follows up the conversation with an email asking for the discovery and stating that she will need time to review it, draft a motion to compel, and have a hearing on the motion and firm's nonsuit. |
| 2/13/15 | Olson sets a hearing on the motion to dismiss for February 27, which is the last day that a hearing can be held unless the Court orders discovery. He emails Kleinhans that he still believes that the firm isn't entitled to any discovery, but attaches a set of voluntary responses that address what appear to be the firm's main contentions. He attaches a copy of the notice of hearing to the email. |
| 2/14/15– 2/15/15 | Kleinhans and Olson exchange emails disagreeing over whether deadlines were met, whether there is good cause to extend the hearing deadline, and other matters. Kleinhans states that she will file a motion to continue if Olson doesn't agree to a continuance. Olson doesn't agree. |
| 2/15/15 | The firm moves to continue and to strike Morin's papers. It sets a hearing for February 17. |

| | |
|---|---|
| 2/17/15 | The Court hears the motion to continue. Later, Olson, at Kleinhans's request, emails her the cases that were discussed. Olson declines the firm's requests to reveal his attorney-client communications. |

# Tab 3

Texas Citizens Participation Act

Chapter 27, Texas Civil Practices & Remedies Code

# Chapter 27. Actions involving the exercise of certain constitutional rights

**Sec. 27.001. Definitions.** In this chapter:

(1) "Communication" includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic.

(2) "Exercise of the right of association" means a communication between individuals who join together to collectively express, promote, pursue, or defend common interests.

(3) "Exercise of the right of free speech" means a communication made in connection with a matter of public concern.

(4) "Exercise of the right to petition" means any of the following:

(A) a communication in or pertaining to:

(i) a judicial proceeding;

(ii) an official proceeding, other than a judicial proceeding, to administer the law;

(iii) an executive or other proceeding before a department of the state or federal government or a subdivision of the state or federal government;

(iv) a legislative proceeding, including a proceeding of a legislative committee;

(v) a proceeding before an entity that requires by rule that public notice be given before proceedings of that entity;

(vi) a proceeding in or before a managing board of an educational or eleemosynary institution supported directly or indirectly from public revenue;

(vii) a proceeding of the governing body of any political subdivision of this state;

(viii) a report of or debate and statements made in a proceeding described by Subparagraph (iii), (iv), (v), (vi), or (vii); or

(ix) a public meeting dealing with a public purpose, including statements and discussions at the meeting or other matters of public concern occurring at the meeting;

(B) a communication in connection with an issue under consideration or review by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding;

(C) a communication that is reasonably likely to encourage consideration or review of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding;

(D) a communication reasonably likely to enlist public participation in an effort to effect consideration of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding; and

(E) any other communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state.

(5) "Governmental proceeding" means a proceeding, other than a judicial proceeding, by an officer, official, or body of this state or a political subdivision of this state, including a board or commission, or by an officer, official, or body of the federal government.

(6) "Legal action" means a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief.

(7) "Matter of public concern" includes an issue related to:

  (i) health or safety;

  (ii) environmental, economic, or community well-being;

  (iii) the government;

  (iv) a public official or public figure; or

  (v) a good, product, or service in the marketplace.

(8) "Official proceeding" means any type of administrative, executive, legislative, or judicial proceeding that may be conducted before a public servant.

(9) "Public servant" means a person elected, selected, appointed, employed, or otherwise designated as one of the following, even if the person has not yet qualified for office or assumed the person's duties:

(A) an officer, employee, or agent of government;

(B) a juror;

(C) an arbitrator, referee, or other person who is authorized by law or private written agreement to hear or determine a cause or controversy;

(D) an attorney or notary public when participating in the performance of a governmental function; or

(E) a person who is performing a governmental function under a claim of right but is not legally qualified to do so.

**Sec. 27.002. Purpose.** The purpose of this chapter is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury.

**Sec. 27.003. Motion to dismiss.**

(a) If a legal action is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may file a motion to dismiss the legal action.

(b) A motion to dismiss a legal action under this section must be filed not later than the 60th day after the date of service of the legal action. The court may extend the time to file a motion under this section on a showing of good cause.

(c) Except as provided by Section 27.006(b), on the filing of a motion under this section, all discovery in the legal action is suspended until the court has ruled on the motion to dismiss.

**Sec. 27.004. Hearing.**

(a) A hearing on a motion under Section 27.003 must be set not later than the 60th day after the date of service of the motion unless the docket conditions of the court require a later hearing, upon a showing of good cause, or by agreement of the parties, but in no event shall the hearing occur more than 90 days after service of the motion under Section 27.003, except as provided by Subsection (c).

(b) In the event that the court cannot hold a hearing in the time required by Subsection (a), the court may take judicial notice that the court's docket conditions required a hearing at a later date, but in no event shall the hearing occur more than 90 days after service of the motion under Section 27.003, except as provided by Subsection (c).

(c) If the court allows discovery under Section 27.006(b), the court may extend the hearing date to allow discovery under that subsection, but in no event shall the hearing occur more than 120 days after the service of the motion under Section 27.003.

**Sec. 27.005. Ruling.**

(a) The court must rule on a motion under Section 27.003 not later than the 30th day following the date of the hearing on the motion.

(b) Except as provided by Subsection (c), on the motion of a party under Section 27.003, a court shall dismiss a legal action against the moving party if the moving party shows by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of:

(1) the right of free speech;

(2) the right to petition; or

(3) the right of association.

(c) The court may not dismiss a legal action under this section if the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question.

(d) Notwithstanding the provisions of Subsection (c), the court shall dismiss a legal action against the moving party if the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim.

**Sec. 27.006. Evidence.**

(a) In determining whether a legal action should be dismissed under this chapter, the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based.

(b) On a motion by a party or on the court's own motion and on a showing of good cause, the court may allow specified and limited discovery relevant to the motion.

### Sec. 27.007. Additional findings.

(a) At the request of a party making a motion under Section 27.003, the court shall issue findings regarding whether the legal action was brought to deter or prevent the moving party from exercising constitutional rights and is brought for an improper purpose, including to harass or to cause unnecessary delay or to increase the cost of litigation.

(b) The court must issue findings under Subsection (a) not later than the 30th day after the date a request under that subsection is made.

### Sec. 27.008. Appeal.

(a) If a court does not rule on a motion to dismiss under Section 27.003 in the time prescribed by Section 27.005, the motion is considered to have been denied by operation of law and the moving party may appeal.

(b) An appellate court shall expedite an appeal or other writ, whether interlocutory or not, from a trial court order on a motion to dismiss a legal action under Section 27.003 or from a trial court's failure to rule on that motion in the time prescribed by Section 27.005.

(c) Repealed by Acts 2013, 83rd Leg., R.S., Ch. 1042, Sec. 5, eff. June 14, 2013.

### Sec. 27.009. Damages and costs.

(a) If the court orders dismissal of a legal action under this chapter, the court shall award to the moving party:

(1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require; and

(2) sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter.

(b) If the court finds that a motion to dismiss filed under this chapter is frivolous or solely intended to delay, the court may award court costs and reasonable attorney's fees to the responding party.

## Sec. 27.010. Exemptions.

(a) This chapter does not apply to an enforcement action that is brought in the name of this state or a political subdivision of this state by the attorney general, a district attorney, a criminal district attorney, or a county attorney.

(b) This chapter does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

(c) This chapter does not apply to a legal action seeking recovery for bodily injury, wrongful death, or survival or to statements made regarding that legal action.

(d) This chapter does not apply to a legal action brought under the Insurance Code or arising out of an insurance contract.

## Sec. 27.011. Construction.

(a) This chapter does not abrogate or lessen any other defense, remedy, immunity, or privilege available under other constitutional, statutory, case, or common law or rule provisions.

(b) This chapter shall be construed liberally to effectuate its purpose and intent fully.

**Tab 4**

Amended Order on Motion to Dismiss

CR 739

Filed in The District Court
of Travis County, Texas

MAR 26 2015

At _____ 4:30 _____ P. M.

Velva L. Price, District Clerk

No. D-1-GN-14-003874

| | |
|---|---|
| Law Office of Kleinhans Gruber, PLLC<br><br>v.<br><br>Levi Morin | 201st District Court<br>Travis County, Texas |

## **Amended Order on Motion to Dismiss**

The Court has considered Morin's motion to dismiss; Kleinhans Gruber's Second Amended Motion to Strike or Deny Morin's Motion to Dismiss; the responses and replies on those motions; the parties' objections; the evidence; and counsel's argument. Based upon that consideration, the Court:

1. **Finds** no good cause to extend the deadline for Morin to file his motion to dismiss;

2. **Finds** Morin did not set the hearing on his motion to dismiss within 60 days after service of the motion, and did not meet any of the exceptions indicating the hearing can be set later than the 60th day;

3. **Strikes** the exhibits to Morin's motion to dismiss, which were filed after the deadline for Morin to file his motion;

4. **Overrules** Morin's objections to the affidavits of Kimberly Kleinhans, Martin Garza, and Michael Siegler;

5. **Finds** that Kleinhans Gruber established, by clear and specific evidence, a prima facie case for defamation and business disparagement based upon Morin's statement that Kleinhans Gruber "sen[t] hung over 'associates' to court dates [Michael Seigler];"

6. **Finds** that Morin did not establish each element of an affirmative defense by a preponderance of the evidence; and

7. **Denies** Morin's motion to dismiss.

Signed on March 26th, 2015, at Austin, Texas.

Stephen Yelenosky
District Judge

Case # D-1-GN-14-003874



003954108



739

**Tab 5**

Notice of Appeal

CR 735

No. D-1-GN-14-003874

LAW OFFICE OF KLEINHANS
GRUBER, PLLC,
*Plaintiff,*

v.

LEVI MORIN,
*Defendant.*

201st District Court
Travis County, Texas

### Morin's Notice of Appeal

The district court denied defendant Levi Morin's motion to dismiss in an oral ruling on March 5, 2015. In the alternative, Morin's motion was denied by operation of law on January 30. He appeals the denial, on whichever date it was rendered, to the Third Court of Appeals.

This appeal is accelerated.

Respectfully submitted,

THE OLSON FIRM PLLC

/s/ Leif A. Olson
Leif A. Olson
  leif@olsonappeals.com
  State Bar No. 24032801
PMB 188
4830 Wilson Road, Suite 300
Humble, Texas 77396
(281) 849-8382
**Counsel for Defendant Levi Morin**

### Certificate of Service

I certify that on March 6, 2015, I served a copy of this *Morin's Notice of Appeal* upon counsel for KG by electronic service:

LAW OFFICE OF KLEINHANS GRUBER, PLLC
Kimberly G. Kleinhans
kim@lawofficeofkg.com
12600 Hill Country Blvd., Ste. R275
Austin, Texas 78738
(512) 961-8512

/s/ Leif A. Olson

735